UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Alford Johnson


        v.                          Civil No. 11-cv-459-JD
                                    Opinion No. 2013 DNH 078

The Capital Offset
Company, Inc. et al.

        and

The Capital Offset
Company, Inc.

        v.

Susan Cox


O R D E R

        Alford Johnson, as the trustee of the Martha Wood Trust,
brought suit against The Capital Offset Company, Inc.; its
president, Jay Stewart; a consultant who later worked for Capital
Offset, Stephen Stinehour; and Acme Bookbinding Company, alleging
claims arising from the publication of a photography book,
Spiritual Passports.  Capital Offset brought a third-party action
against Susan Cox, who was a graphic designer for the
publication.  Johnson's negligence claims against Acme and
Capital Offset and his claims for enhanced compensatory damages
against Stewart and Capital Offset were previously dismissed.

Johnson moves for leave to file an amended complaint to add claims for negligence and breach of contract against Acme.[1]  In support, Johnson contends that good cause exists to allow the proposed amendments.  Acme objects to the motion, arguing that Johnson has not shown good cause to allow the untimely amendments and that the proposed amendments also should be denied as futile.

Standard of Review

Leave to amend should be freely given unless the proposed amendment would be futile or is the result of undue delay or bad faith.  Calderon-Serra v. Wilmington Tr. Co., --- F.3d ---, 2013 WL 1715518, at *4 (1st Cir. Apr. 22, 2013).  When a party seeks leave to amend pleadings after the deadline, however, the moving party first must show good cause to modify the scheduling order.  Fed. R. Civ. P. 16(b)(4); Flores-Silva v. McClintock-Hernandez, 710 F.3d 1, 3 (1st Cir. 2013).  Good cause, for purposes of modifying a scheduling order, "focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent."  Somascan, Inc. v. Phillips Med. Sys.

---

[1]Because Johnson originally alleged a negligence claim against Acme, which Johnson later agreed to dismiss, he frames his motion as seeking leave to revive the negligence claim.

<u>Nederland, B.V.</u>, --- F.3d ---, 2013 WL 1715568, at *1 (1st Cir. Apr. 22, 2013) (internal quotation marks omitted).

## Discussion

Johnson contends that good cause exists to allow a late amendment of the complaint and that the proposed new claims are supported by evidence obtained through discovery during the period between the end of November of 2012 and the end of January of 2013.  Johnson also contends that the late amendment will not prejudice Acme.  Acme objects on the grounds that Johnson has not shown good cause to modify the scheduling order deadline and that the proposed claims are futile.

A.  <u>Good Cause</u>

The Rule 16(b)(4) good cause standard requires the moving party to show that he has acted diligently.  <u>O'Connell v. Hyatt Hotels of P.R.</u>, 357 F.3d 152, 155 (1st Cir. 2004).  Although diligence is the primary focus, prejudice to the opposing party caused by the delay is also relevant.  <u>Id.</u>  Therefore, "the longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for

3

the court to withhold permission to amend." <u>Steir v. Girl Scouts</u>
<u>of USA</u>, 383 F.3d 7, 12 (1st Cir. 2004).

Acme moved to dismiss Johnson's negligence claim on November
28, 2011.  Johnson filed a notice of voluntary dismissal of the
claim on December 15, 2011.  The parties' discovery plan, setting
April 15, 2012, as the deadline for amending pleadings, was filed
on December 29, 2011, and approved on December 30, 2011.  The
court granted Acme's motion to dismiss, based on the notice of
voluntary dismissal, on March 6, 2012.

On July 24, 2012, Johnson moved to amend parts of the
discovery plan but not the deadline for amending pleadings, and
the motion was granted the same day.  Johnson again moved to
amend the discovery plan, without seeking to change the deadline
for amending pleadings, on September 14, 2012, and January 18,
2013, and those motions were granted.  Johnson moved to amend the
complaint on April 24, 2013, more than a year after the deadline
for amending pleadings.[2]  The deadline for dispositive motions is
June 14, 2013, and trial is scheduled for the two-week period
beginning on December 10, 2013.

---

[2]On April 12, 2013, Capital Offset moved to amend its
answer, crossclaim, and counterclaim.  The court denied both
motions to amend without prejudice because they failed to address
the applicable standard under Federal Rule of Civil Procedure
16(b)(4).

Johnson contends that good cause exists for his late motion because discovery was delayed by the closure of his counsel's former law firm in February of 2012.  Due to that delay and scheduling problems, depositions did not begin until late September of 2012.

Johnson represents that through discovery between July and October of 2012, he obtained the purchase order which was the agreement between Capital Offset and Acme for binding Spiritual Passports.  He then learned additional facts during the deposition of Paul Parisi, President of Acme, on November 14, 2012, that Johnson thought implicated an exception to the economic loss doctrine.  Johnson asserts that Parisi's deposition testimony was confirmed by the deposition testimony of two Acme employees in January of 2013.[3]  Johnson sent the motion for leave to amend to Acme on April 16 and filed the motion on April 24.

Johnson's motion for leave to amend is a year late.  Despite having moved to extend other deadlines in the scheduling order, Johnson did not seek an extension of the deadline for amending

---

[3]Johnson states: "Following receipt of the transcripts of the depositions of Messrs. Raye and DiCristoforo on February 11, 2013, Plaintiff determined that the deposition testimony of Mr. Parisi, as confirmed by the testimony of Messrs. Raye and DiCristoforo, enabled Plaintiff to allege sufficient facts concerning the relationship between Acme and Capital concerning the Spiritual Passports project in order to bring Plaintiff's negligence claim against Acme outside of the economic loss rule."

pleadings.  Even crediting Johnson's explanation for the delay,
he had the information for his new claims after Parisi's
deposition in mid-November of 2012 and that testimony was
confirmed by the employees' deposition testimony in January of
2013.  Johnson provides no persuasive reason for waiting another
three months, until mid-April, to move for leave to amend.
Therefore, given the protracted delay, Johnson has not shown
diligence in pursuing his new claims against Acme.

        In addition, the dispositive motion deadline is June 14, and
trial is six months away.  This case has been pending since
September of 2011.  Adding new claims against Acme at this late
date would be prejudicial to Acme and the other defendants.
Taken together, the circumstances pertaining to Johnson's new
claims against Acme do not support good cause to modify the
scheduling order to permit a late amendment.


B.  Futility

        Even if Johnson were able to show good cause for the delay,
an amendment will not be permitted if it would be futile.
Universal Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 418
(1st Cir. 2007).  A proposed amendment to a complaint is futile
if, as amended, "the complaint still fails to state a claim."
Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 117 (1st

Cir. 2009).  Therefore, review for futility is identical to
review under Federal Rule of Civil Procedure 12(b)(6).  Edlow v.
RBW, LLC, 688 F.3d 26, 40 (1st Cir. 2012).

    "To survive a motion to dismiss for failure to state a
claim, a complaint . . . 'must contain sufficient factual matter,
accepted as true, to state a claim to relief that is plausible on
its face.'"  Gianfrancesco v. Town of Wrentham, 712 F.3d 634, ---
(1st Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009)) (additional internal quotation marks omitted).  The court
"separate[s] the factual allegations from the conclusory
statements in order to analyze whether the former, if taken as
true, set forth a plausible, not merely a conceivable, case for
relief."  Juarez v. Select Portfolio Servicing, Inc., 708 F.3d
269, 276 (1st Cir. 2013) (internal quotation marks omitted).

    Johnson seeks leave to add claims against Acme for
negligence and breach of contract.  Acme contends that Johnson's
proposed amendment does not state either claim.

    1.   Negligence

    Johnson alleged a negligence claim against Acme, and then
voluntarily dismissed the claim, without prejudice, in response

7

to Acme's motion to dismiss under the economic loss doctrine.[4]
Under New Hampshire law, the economic loss doctrine "preclude[s]
contracting parties from pursuing tort recovery for purely
economic or commercial losses associated with the contract
relationship." Wyle v. Lees, 162 N.H. 406, 410 (2011) (internal
quotation marks omitted).  The economic loss doctrine also
applies even in the absence of a contract between the parties.
Plourde Sand & Gravel v. JGI Eastern, Inc., 154 N.H. 791, 795
(2007).  When no contract exists between the parties, however, a
recovery for purely economic loss is allowed "under the special
relationship or negligent misrepresentation exceptions to the
privity rule." Id. at 795-96.

Johnson contends that he now alleges a claim for economic
loss under the special relationship exception.  A special
relationship for purposes of the exception is similar to the duty
"owed by a promisor to a third-party beneficiary," that is, "if
the contract is so expressed as to give the promisor reason to
know that a benefit to a third party is contemplated by the
promisee as one of the motivating causes of making the contract."
Id. at 796.  The special relationship exception "hinge[s] upon
the presence of an independent duty owed to the plaintiff because

_____

[4]Johnson also alleged negligence against Capital Offset and
voluntarily dismissed the claim.

of the nature of the 'special relationship' with the defendant."
Id. at 796-97.

A qualifying special relationship has been found between a
beneficiary and a bank when the bank failed to establish a
survivorship account as directed by the depositor, between an
attorney and the intended beneficiaries of a will, and between
insurance investigators and the insureds.  Id.  The New Hampshire
Supreme Court has limited the liability of attorneys to those
relationships where the primary purpose of the client was to
benefit or influence the third party and has not extended the
exception to relationships in "the construction arena."  Id.
Specifically, the exception does not apply when the plaintiff was
"essentially alleging that the defendant negligently performed
its duties under its contract with another party and that as a
result, the plaintiff lost the benefit of its bargain" with
another party.  Id. at 798.

In Count III of the proposed amended complaint, the only
allegations specifically pertinent to negligence by Acme are the
following:

> 92.  Acme had a special relationship with Plaintiff in
> connection with the binding of Spiritual Passports.
>
> 93.  Acme owed a duty to Plaintiff to exercise
> reasonable care in binding Spiritual Passports,
> consistent with industry standards for the binding of
> fine art books.

> 96.   Acme breached its duty to Plaintiff by failing to
> exercise reasonable care when binding Spiritual
> Passports.

Those conclusory allegations are insufficient to state a

negligence claim under the special relationship exception to the

economic loss doctrine.

Johnson cites deposition testimony to support his negligence

claim rather than showing that the complaint alleges facts to

support the claim.   In the "Statement of Facts," Johnson alleges

that Capital Offset and Stinehour told Johnson that Acme did not

have the equipment necessary to bind Spiritual Passports and then

said that Acme had purchased the necessary equipment.   He alleges

that Stinehour recommended that Johnson approve Capital Offset's

choice to hire Acme over another bindery.   He also alleges that

Acme did not have the knowledge, experience, or equipment to do

the binding in a manner consistent with industry standards, but

Capital Offset, Stinehour, and Acme did not tell Johnson of those

deficiencies.   Johnson contends that Spiritual Passports was not

printed or bound in a manner consistent with his specifications

and industry standards.

Johnson also alleges that he found defects in the copies of

Spiritual Passports that were printed and bound as samples before

distribution.   He contends that although it was unusual for Acme

to do so, Acme communicated directly with Johnson about the

10

defects and the measures to be taken to fix the problems and
proceeded with the project "only after Acme believed that
Plaintiff had approved those measures."  Despite those efforts,
Johnson alleges that the final books had defective bindings.

Johnson's non-conclusory allegations in the proposed amended
complaint, taken as true, do not establish a special relationship
between Johnson and Acme that would allow an exception to the
economic loss doctrine.  As in <u>Plourde</u>, Johnson is alleging that
Acme negligently performed its duties under its contract with
Capital Offset, and that as a result, Johnson lost the benefit of
his arrangement with UT Press for distribution and promotion of
the books.  Because Johnson does not allege facts in the proposed
amended complaint that show an exception to the economic loss
doctrine would apply, he fails to state a claim on which relief
may be granted.

    2.  <u>Breach of Contract</u>

In Count X of the proposed complaint, Johnson alleges a
breach of contract claim against Acme under a theory that he was
a third-party beneficiary to the contract between Capital Offset
and Acme for binding Spiritual Passports.  Acme contends that the
third-party beneficiary theory does not apply in the
circumstances of this case.

"The third-party beneficiary doctrine is an exception to the general rule that a non-party to a contract has no remedy for breach of contract."  Brooks v. Trustees of Dartmouth College, 161 N.H. 685, 697 (2011).  "A third-party beneficiary relationship exists if: (1) the contract calls for a performance by the promisor, which will satisfy some obligation owed by the promisee to the third party; or (2) the contract is so expressed as to give the promisor reason to know that a benefit to a third party is contemplated by the promisee as one of the motivating causes of his making the contract."  Id.  Importantly, third-party beneficiary status must be based on a right expressed in the contract to allow the third party to enforce a promise in the contract.  Id. at 698.

Johnson included a copy of the "Purchase Order" contract between Acme and Capital Offset with his motion for leave to amend.  The contract lists Johnson as the customer and describes the project as "Alford Johnson - Spiritual Passports."  Johnson does not allege that the contract or the dealings between Acme and Capital Offset demonstrate that Acme and Capital Offset intended to give Johnson the right to enforce the contract.  In the absence of allegations showing that intent, Johnson has not sufficiently alleged that he was the third party beneficiary of

12

the contract between Acme and Capital Offset.  Therefore, the breach of contract claim is futile.

## Conclusion

For the foregoing reasons, the plaintiff's motion for leave to file an amended complaint (document no. 78) is denied.


SO ORDERED.


_____
Joseph A. DiClerico, Jr.
United States District Judge

May 22, 2013

cc:  Jennifer Turco Beaudet, Esquire
     Lawrence F. Boyle, Esquire
     Elsabeth D. Foster, Esquire
     Thomas J. Pappas, Esquire
     Arnold Rosenblatt, Esquire
     Mark W. Shaughnessy, Esquire
     William N. Smart, Esquire