UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>Alford Johnson, as Trustee</u>
<u>of The Martha Wood Trust</u>

  v.

<u>The Capital Offset</u>
<u>Company, Inc., et al.</u>

  and             Civil No. 11-cv-459-JD

<u>The Capital Offset</u>
<u>Company, Inc., et al.</u>

  v.

<u>Susan Cox</u>

O R D E R

   Alford Johnson, as the trustee of the Martha Wood Trust,
brought suit against The Capital Offset Company, Inc.; its
president, Jay Stewart; a consultant who later worked for Capital
Offset, Stephen Stinehour; and Acme Bookbinding Company, alleging
claims arising from the publication of a photography book,
<u>Spiritual Passports</u>.  Capital Offset brought a third-party action
against Susan Cox, who was a graphic designer for the
publication.  Susan Cox moved for summary judgment on all claims
against her.  Capital Offset failed to respond to her motion.

Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine issue is one that can be resolved in favor of either party and a material fact is one which has the potential of affecting the outcome of the case."  Jakobeic v. Merrill Lynch Life Ins. Co., 711 F.3d 217, 223 (1st Cir. 2013) (internal quotation marks omitted).  In deciding a motion for summary judgment, the court draws all reasonable factual inferences in favor of the nonmovant.  Kenney v. Floyd, 700 F.3d 604, 608 (1st Cir. 2012).

In this district, both the proponent and the opponent of summary judgment are required to provide "a short and concise statement of material facts, supported by appropriate record citations."  LR 7.2(b).  "All properly supported material facts set forth in the moving party's factual statement shall be deemed admitted unless properly opposed by the adverse party."  LR 7.2(b)(2).  Because Capital Offset did not file a response to the motion for summary judgment, the properly supported material facts in Cox's factual statement are deemed admitted.

Background

Alford Johnson undertook a project of publishing a collection of photographs taken by his wife, Martha Wood, as a memorial to her after her death in 2004.  Johnson sought the assistance of Susan Cox, who is a design director and graphic artist.  Cox has had a fifty-year career in design, has worked in art studios in various capacities, and has managed and represented artists, illustrators, and photographers.  Cox also has had experience in producing printed pieces and was the writer and designer of two books before working with Johnson.

Johnson hired Cox as the design director for the project. Working together, Johnson and Cox decided to produce a bilingual fine art book of Wood's photographs accompanied by poetry and design elements.  Johnson and Cox worked for four years to design and publish the 140-page book, titled Spiritual Passports.

A member of Cox's team contacted Stephen Stinehour as a consultant for printing and binding the book.  Stinehour introduced Johnson and Cox to Capital Offset and encouraged them to hire Capital Offset to print and bind the book.  There were extensive communications about the details for the book, including its size, design, layout, number of pages, choice of paper, binding, and marketing.  After reaching agreement on the details and the estimates for printing and binding, the book was

printed in August of 2009.  Acme Bookbinding Company, Inc. was
chosen to bind the book.  The total number of finished books was
to be 1500, which were to be sold for $75.00 each.

Cox and Johnson were present while the book was being
printed, which included the "press check and press-approval
process."  Johnson and Cox reviewed and signed "match sheets" of
the eighteen signatures in the book which were used as a template
for the finished books.  Cox left Capital Offset after ten days
when she understood that printing was complete, and "she had not
been informed that there were any issues with any of the pages
that had been printed based upon the signed match sheets she had
approved."

There were then delays in the final production of the books
that were due in part to problems with the production process.
Once complete, the books were sent to University of Texas Press,
in Austin, Texas, for distribution.  Cox reviewed the books in
the Press's warehouse and discovered that a substantial number of
the books had serious defects in printing and binding.  Some of
the defects were ink smears, red streaks, dust spots, color
inconsistences from page to page, black roller marks, inadequate
ink coverage, poor color matching, scuffs, glue on text and
photographs, imperfect varnish, and torn or creased pages.  Cox
also noticed significant issues with the binding.  Cox brought

the problems to the attention of Johnson, Capital Offset, and
Acme.

Jay Stewart, president of Capital Offset, acknowledged in a
telephone conversation in early March of 2010 that a substantial
number of the books which had been delivered to University of
Texas Press were substandard.  In an email dated March 18, 2010,
Stewart stated: "We agree you have received substandard books,
both with binding and with print defects."  Stewart also
acknowledged many defects in the books during his deposition
taken on December 12, 2012.  Robert A. DeCristoforo, Jr. of Acme,
the book binder, testified during his deposition that the lack of
a glue trap in the books caused problems with the bindings.

In a letter dated May 4, 2010, Stewart stated: "Given the
history, I do not believe it to be in our collective interests to
reprint this book here at Capital."  Stewart offered to reimburse
a deposit made, to pay for certain expenses incurred because of
the problems with the books, and not to seek compensation for
amounts paid by Capital Offset.  Stewart suggested that Johnson
start the process again with a new printer.

Johnson brought suit against Capital Offset, Stewart, and
Acme.  Capital Offset filed a third-party complaint against Cox.
In the third-party complaint, Capital Offset alleges claims for

contribution, indemnity, tortious interference with advantageous
business relations, and unjust enrichment against Cox.

## Discussion

Cox seeks summary judgment on the grounds that Capital
Offset failed to obtain Johnson's approval to include the
contribution claim in this case, that no basis exists for the
indemnity claim, that Cox did not interfere with Capital Offset's
contractual relationship with Johnson, and that Capital Offset
has no claim for unjust enrichment.  Because Capital Offset
failed to respond to the motion, the court must determine whether
Cox is entitled to summary judgment as a matter of law based on
the undisputed facts as she has presented them.

A.   Contribution

Cox argues that Capital Offset is not entitled to maintain a
contribution claim in this case, pursuant to RSA 507:7-f, because
Capital Offset failed to obtain Johnson's consent to bring the
claim.  Cox cites Connors v. Suburban Propane Co., 916 F. Supp.
73 (D.N.H. 1996) in support of her argument.  Although the
decision in Connors has been disputed in this district and the
District of Maine, see McNeil v. Nissan Motor Co., Ltd., 365 F.
Supp. 2d 206, 214 (D.N.H. 2005); Z.B. ex rel. Kilmer v.

<u>Ammonoosuc Comty. Health Servs., Inc.</u>, 225 F.R.D. 60, 61-62 (D. Me. 2004), Capital Offset does not make any argument to oppose the rule followed in <u>Connors</u>.  In the absence of a persuasive argument to the contrary, <u>Connors</u> remains good law in this district.

In these unusual circumstances, Cox is entitled to summary judgment in her favor on the contribution claim.

B.  <u>Indemnity</u>

Capital Offset alleges in support of the indemnity claim that Cox convinced Johnson of her expertise in book quality when she was aware of Johnson's relationship with Capital Offset. Capital Offset further alleges:  "Based upon the relationship of the parties, where the liability of Capital Offset derives entirely from conduct of Susan Cox, Susan Cox has an implied obligation to defend and indemnify Capital Offset against claims of damages generated by her conduct."  Cox moves for summary judgment on the ground that no facts exist to support a claim for implied indemnity in this case.

Under New Hampshire law, a right to indemnification is rarely implied.  <u>Dunn v. CLD Paving, Inc.</u>, 140 N.H. 120, 123 (1995).  When indemnity has been implied, "'the indemnitor had agreed to perform a service for the indemnitee.'"  <u>Id.</u> (quoting

7

Collectramatic, Inc. v. Kentucky Fried Chicken Corp., 127 N.H.
318, 321 (1985)).  Further, the indemnitor must have performed
the service negligently, which "cause[d] harm to a third party in
breach of a nondelegable duty of the indemnitee."  Jaswell Drill
Corp. v. Gen. Motors Corp., 129 N.H. 341, 346 (1987).

        Cox agreed to perform a service for Johnson.  There are no
facts that suggest that Cox agreed to perform a service for
Capital Offset.  Therefore, in the absence of an agreement
between Cox and Capital Offset, no right to indemnification can
be implied.

C.   Tortious Interference with Business Relationship

        A claim for tortious interference with an advantageous
business relationship requires proof that "(1) the plaintiff had
an economic relationship with a third party; (2) the defendant
knew of this relationship; (3) the defendant intentionally and
improperly interfered with this relationship; and (4) the
plaintiff was damaged by such interference."  Singer Asset Fin.
Co., LLC v. Wyner, 156 N.H. 468, 478 (2007).  The interference
must be improper, that is, it must be motivated by an improper
purpose.  Nat'l Emp't Serv. Corp. v. Olsten Staffing Serv., Inc.,
145 N.H. 158, 162 (2000); Roberts v. Gen. Motors Corp., 138 N.H.

532, 540-41 (1994) (providing factors to consider in determining whether interference was improper).

Johnson hired Cox to serve as the design director for Spiritual Passports.  Based on the undisputed facts, there were significant defects in the books that Capital Offset printed. The record provides no facts to suggest that Cox acted improperly to the extent she pointed out the defects to Johnson or influenced him not to accept defective books.  See, e.g., Bourne v. Town of Madison, 2010 WL 1909304, at *9 (D.N.H. May 12, 2010).

Therefore, Cox is entitled to summary judgment on Capital Offset's tortious interference with contractual relations claim.

D.  Unjust Enrichment

"Unjust enrichment is an equitable remedy that is available when an individual receives a benefit which would be unconscionable for him to retain."  Axenics, Inc. v. Turner Const. Co., 164 N.H. 659, 669 (2013).  In support of the unjust enrichment claim, Capital Offset alleged that Cox received fifty copies of Spiritual Passports from Capital Offset but did not pay for the books or return them.

Cox states in her affidavit submitted in support of her motion for summary judgment that any books she received were defective and were turned over during discovery in this case.

Therefore, Cox no longer has possession of the books and does not want them returned to her.  Based on the undisputed facts, Cox was not unjustly enriched by receiving copies of <u>Spiritual Passports</u>, which she relinquished during discovery.

Conclusion

For the foregoing reasons, the defendant's motion for summary judgment (document no. 86) is granted.

All claims alleged by Capital Offset against Susan Cox in the third-party complaint (document no. 17) are dismissed.


SO ORDERED.


_Joseph A. DiClerico, Jr._
Joseph A. DiClerico, Jr.
United States District Judge

July 30, 2013

cc:  Jennifer Turco Beaudet, Esquire
     Lawrence F. Boyle, Esquire
     Elsabeth D. Foster, Esquire
     Thomas J. Pappas, Esquire
     Arnold Rosenblatt, Esquire
     Mark W. Shaughnessy, Esquire
     William N. Smart, Esquire