UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>Alford Johnson, as Trustee
of the Martha Wood Trust</u>

   v.                                   Civil No. 11-cv-459-JD
                                       Opinion No. 2013 DNH 126
<u>The Capital Offset Company, Inc.,
Jay Stewart, Stephen Stinehour,
and Acme Bookbinding Company, Inc.</u>

<u>O R D E R</u>

Alford Johnson, as the trustee of the Martha Wood Trust, brought suit against The Capital Offset Company, Inc.; its president, Jay Stewart; a consultant who later worked for Capital Offset, Stephen Stinehour; and Acme Bookbinding Company, alleging claims arising from the publication of a photography book, <u>Spiritual Passports</u>.[1]  Capital Offset and Stewart move for summary judgment on five of the claims Johnson brings against them, Counts IV, V, VI, VII, and IX, but do not move for summary judgment on the breach of contract and breach of the covenant of

---

[1] Capital Offset's third-party claims against Susan Cox have been resolved on summary judgment.

good faith and fair dealing claims against Capital Offset, Counts I and II.[2]  Johnson objects to summary judgment.

## Expert Opinion

In his objection, Johnson relies in part on the opinions of his expert witness, Donald Mazzella, about defects in printing and binding <u>Spiritual Passports</u>.  Capital Offset and Stewart challenge Mazzella's qualifications to express the opinion that all of the books will fail because of the absence of a glue trap.[3]  In support, Capital Offset and Stewart point to Mazzella's deposition testimony that his recent experience has been primarily in internet and periodical publishing, that he has not had experience with art books that required a glue trap, and that Mazzella does not consider himself an expert in bookbinding.

Federal Rule of Evidence 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if the testimony will assist the trier of fact, has a sufficient factual basis, and is reliable.  Fed. R. Evid. 702.  "The

---

[2]Johnson's negligence claim against Capital Offset in Count III has been dismissed.

[3]A glue trap is made by not applying ink or varnish on the part of each page that will be bound, which allows better adherence of the glue to each page during binding.

proponent of the evidence bears the burden of demonstrating its admissibility." United States v. Tetioukhine, --- F.3d ---, 2013 WL 3836263, at *4 (1st Cir. July 26, 2013).

Johnson did not respond for purposes of this motion to the challenge to Mazzella's opinion.  In response to a similar challenge in the context of Acme's motion for summary judgment, Johnson cited Mazzella's later deposition testimony where he stated that he had sufficient experience in the publishing industry to know whether a book was properly bound.  With respect to Spiritual Passports specifically, Mazzella stated that he had shown the book to people at a "print expo" in Chicago and that they said "the same thing," apparently meaning that the book was not properly bound.  Mazzella further testified that although he lacked expertise in binding, his experience was sufficient to support an opinion about the adequacy of the binding.

As the court concluded for purposes of Acme's motion for summary judgment, Johnson has not demonstrated here that Mazzella has the scientific, technical, or specialized knowledge that would allow him to give opinions about the methods and technical processes of bookbinding.  Specifically, Johnson has not shown that Mazzella has sufficient knowledge about the use of glue traps in art books to give the opinion that all of the bindings on all of the copies of Spiritual Passports will fail because the

books lack glue traps. Therefore, for purposes of this motion for summary judgment, the court will not consider Mazzella's opinion about the effect of a lack of glue traps.[4]

## Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On issues where the movant does not have the burden of proof at trial, the movant can succeed on summary judgment by showing 'that there is an absence of evidence to support the nonmoving party's case.'" OneBeacon Am. Inc. Co. v. Commercial Union Assurance Co. of Canada, 684 F.3d 237, 241 (1st Cir. 2012) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

In deciding a motion for summary judgment, the court draws "all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and

---

[4]Capital Offset and Stewart also assert briefly that Johnson's advisors, Susan Cox and Frank Biancalana, have less experience in printing art books than Capital Offset. To the extent Capital Offset and Stewart intended to challenge any opinions provided by Cox and Biancalana under Rule 702, that argument was not sufficiently developed to be addressed. See Higgins v. New Balance Athletic Shoes, Inc., 194 F.3d 252, 260 (1st Cir. 1999); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

unsupported speculation." Pruco Life Ins. Co. v. Wilmington Tr. Co., 721 F.3d 1, 6-7 (1st Cir. 2013) (internal quotation marks omitted). "A genuine issue is one that can be resolved in favor of either party, and a material fact is one which has the potential of affecting the outcome of the case." Jakobiec v. Merrill Lynch Life Ins. Co., 711 F.3d 217, 223 (1st Cir. 2013).

### Background

Johnson hired Capital Offset in January of 2009 to produce a book of photographs, Spiritual Passports. Johnson states in his deposition that he, assisted by his design director, Susan Cox, and her associate, Frank Biancalana, chose Capital Offset based on the recommendations of Steven Stinehour. Johnson then approved Capital Offset's decision to hire Acme to bind the book.

After some problems were discovered and addressed during initial runs of the book, the book was printed, bound, and sent to the University of Texas Press for publication. A number of the books have since been found to be defective.

Capital Offset and Stewart assert that Johnson admits "that Capital Offset is qualified to print a book of this nature and that Acme Bookbinding is qualified to bind a book of this nature." In support, they cite Johnson's responses to their requests for admissions. Johnson, however, denied the cited

5

requests for admissions.  In his objection, Johnson also denied that Capital Offset and Acme were qualified to print and bind <u>Spiritual Passports</u>.  Therefore, the representation made by Capital Offset and Stewart is not considered here.

Discussion

Capital Offset and Stewart seek summary judgment on Johnson's claims of negligent, intentional, and fraudulent misrepresentation; fraudulent concealment; and violation of the New Hampshire Consumer Protection Act.  Johnson objects, arguing that the economic loss doctrine does not bar his negligent misrepresentation claim and that material disputed facts preclude summary judgment on all challenged claims.  In their reply, Capital Offset and Stewart assert that the economic loss doctrine applies and that Johnson cannot show justifiable reliance on any representations.

A.   <u>Negligent Misrepresentation</u>

Capital Offset and Stewart move for summary judgment on Johnson's negligent misrepresentation claim, asserting that claims of misrepresentation about the quality of the books produced are barred by the economic loss doctrine and that his claims of misrepresentation in inducing the contract lack factual

support. In response, Johnson narrowed the negligent misrepresentation claim to allege only that Capital Offset and Stewart negligently misrepresented that Capital Offset and Acme "were properly qualified and possessed the skills, experience, tested materials, and equipment necessary to print and bind Spiritual Passports [sic] in a reasonable and appropriate manner, consistent with industry standards for the printing and binding of fine art books." Doc. no. 99, at 8. More specifically, Johnson asserts that Capital Offset and Stewart were obligated to determine whether they could produce the book as it was designed before agreeing to the project.

1. Economic Loss Doctrine

The economic loss doctrine "preclude[s] contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contract relationship." Wyle v. Lees, 162 N.H. 406, 410 (2011) (internal quotation marks omitted). In other words, a plaintiff cannot recover damages in tort for a negligently performed contract. Plourde Sand & Gravel v. JGI Eastern, Inc., 154 N.H. 791, 794 (2007). When the plaintiff alleges that the defendant's misrepresentations induced him to enter the contract, however, the claim does not duplicate a

breach of contract claim and is not barred by the economic loss doctrine.  Wyle, 162 N.H. at 411.

In its current narrowed form, Johnson's negligent misrepresentation claim focuses on representations made before he hired Capital Offset to produce Spiritual Passports that he alleges were made to induce him to enter the contract with Capital Offset.  As now stated, the claim does not pertain to performance of the contract.  Therefore, the narrowed claim is not barred by the economic loss doctrine.

### 2. Qualification to Print the Book

With respect to the claim of negligent misrepresentation in the inducement of the contract, Capital Offset and Stewart assert that Johnson cannot prove the claim because he has admitted that they "were qualified to print and bind fine art books generally." Doc. 88, at 17.  That statement is not supported by a citation to the record.  To the extent it is based on Johnson's responses to the requests for admissions, the statement is not supported by the record.

Capital Offset and Stewart appear to argue either that Johnson does not dispute their qualifications when they entered the contract because he discovered their alleged inability to produce the book only after defects were found or that evidence

of a defective book does not show a lack of qualification or ability to produce the book. The court does not understand the reasoning of either theory. If Johnson had discovered that Capital Offset was unable to produce the book he proposed <u>before</u> entering the contract, presumably he would not have hired Capital Offset. If defects in the books produced showed that Capital Offset was unable to produce the book that Johnson proposed, a reasonable inference could be that Capital Offset was unable to produce the book when it entered the contract. In any case, the argument is not persuasive.

Capital Offset and Stewart are not entitled to summary judgment on the negligent misrepresentation claim, Count IV, as limited to misrepresentations about Capital Offset's qualifications to print the book.

B.  <u>Fraud</u>

Johnson alleges claims of intentional misrepresentation, fraudulent representation, and fraudulent concealment. Capital Offset and Stewart move for summary judgment on the grounds that Johnson lacks evidence that they acted fraudulently in producing the books or in representing the quality of the books produced and that Johnson cannot show that he justifiably relied on any statements made about the quality of the final books.

      1.   <u>Intentional and Fraudulent Misrepresentation</u>

In Count V, Johnson alleges that all of the defendants intentionally misrepresented that Capital Offset and Acme had the qualifications, skills, and equipment to produce <u>Spiritual Passports</u> and then intentionally misrepresented that books produced were consistent with Johnson's specifications and industry standards.  In Count VI, Johnson alleges that Capital Offset and Stewart fraudulently represented to him that the books had been printed and bound according to his specifications and industry standards.

Intentional misrepresentation is fraud under New Hampshire law.  <u>Tessier v. Rockefeller</u>, 162 N.H. 324, 332 (2011).  "One who fraudulently makes a misrepresentation for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation."  <u>Id.</u> at 331-32 (internal quotation marks omitted).  Fraud requires proof "that the representation was made with knowledge of its falsity or with conscious indifference to its truth and with the intention of causing another person to rely on the representation."  <u>Id.</u> at 332.  "Fraud must be proved by clear and convincing evidence."  <u>Hair Excitement, Inc. v. L'Oreal U.S.A., Inc.</u>, 158 N.H. 363, 369 (2009).

     a.   Qualification to Produce Books

To show that Capital Offset and Stewart knew before they began the project that they would not be able to produce the book, Johnson cites an email from Stewart to Susan Cox. The email is dated May 5, 2010, which is after the books had been produced, sent to University of Texas Press, and defects had been found. In the email, Stewart is explaining why Capital Offset would not attempt to reprint Spiritual Passports.

Stewart wrote that when he first reviewed the project he thought it would be challenging but that they would do fine. In retrospect, Stewart said that their machines might not have been sufficient for the project. He recommended that they find a print shop that used a machine that he did not have.

Johnson also cites the deposition testimony of his expert witness, Daniel Mazzella, to show that Capital Offset and Stewart should have determined whether they could produce the book that Johnson proposed before entering the contract. The cited testimony, however, discusses the process by which the printer produces a copy of the proposed design, a press proof, from which the customer decides whether to contract with that printer. If the customer approves the press proof and enters into an agreement with the printer, the customer expects the same quality through the printing process. Mazzella also said that he would

expect a printer to reject the project if he thought there would be printing problems.

The email and Mazzella's testimony do not show that Capital Offset and Stewart intentionally misrepresented their ability to print Spiritual Passports. Stewart's email suggests the opposite.[5] As described by Mazzella, the process of assessing the ability of the printer to produce a project appears to be shared by the customer and the printer. Therefore, Johnson lacks clear and convincing evidence that Capital Offset and Stewart intentionally misrepresented their ability to produce Spiritual Passports.

    b.   Quality of the Final Books

Johnson provides considerably more evidence of problems that occurred during printing and binding the books. Although Capital Offset and Stewart argue that only twenty-one books were found to be defective and that the small number of defective books undermines Johnson's claim, the record evidence does not support

---

[5]Stewart's discussion of a machine that Capital Offset had considered buying does not appear to show that he knew he could not print Spiritual Passports without the machine.

that theory.[6]  Whether Capital Offset and Stewart intentionally misrepresented the quality of the final books is disputed.

Capital Offset and Stewart also contend that Johnson did not rely on any representations about the quality of the books because he had the opportunity to inspect them when he happened to visit Acme during the binding process.  The import of Johnson's visit is disputed, however, because he provides evidence that he is not an expert in printing or binding, that Capital Offset and Stewart knew that Cox and Biancalana made the production decisions and they were not present, and that Capital Offset employees told Johnson that it was acceptable to use a marker to touch up final copies of the books.  In addition, Johnson contends that Capital Offset and Stewart improperly shipped defective copies of the book that had been "culled" out while he was there.

Therefore, Capital Offset and Stewart are not entitled to summary judgment on Counts V and VI on the claims that they intentionally or fraudulently misrepresented the quality of the final books.  They are entitled to summary judgment to the extent those claims are based on the theory that Capital Offset and

---

[6]The evidence Johnson provides suggests that hundreds of the books were defective.

Stewart intentionally or fraudulently misrepresented their ability to produce the book.

### 2. Fraudulent Concealment

Fraudulent concealment requires proof that the defendant intentionally concealed or suppressed a known fact for the purpose of misleading the plaintiff when the plaintiff did not have equal means of obtaining the information. See Donna M King v. Philip Morris, Inc., 2000 WL 34016358, at *10 (N.H. Superior Ct. Nov. 2, 2000)(citing Town of Hooksett Sch. Dist. v. W.R. Grace Co., 617 F. Supp. 126, 133 (D.N.H. 1984)). For purposes of an exception to the statute of repose or limitations, which is the usual context in which fraudulent concealment arises, "fraudulent concealment occurs when '[o]ne party to a transaction . . . by concealment or other action intentionally prevents the other from acquiring material information.'" Lamprey v. Britton Const., Inc., 163 N.H. 252, 259 (2012) (quoting Restatement (Second) of Torts § 550, at 118 (1977)).

In Count VII, Johnson alleges that Capital Offset and Stewart represented to him that the books had been printed and bound according to his specifications and industry standards and failed to disclose defects in the books. More specifically, Johnson contends that Capital Offset and Stewart fraudulently

concealed the defective nature of the final books by telling him that they would use a microdot pen to fix some books when they actually covered defects in the books with a marker, by telling Johnson that defective sheets and books would be discarded but then including them in the shipment of final books, and by shrink-wrapping the books to avoid review before they were distributed.

Capital Offset and Stewart contend that the shrink-wrapping was required by the contract with Johnson and was not done to hide the quality of the books.  They argue that because Johnson was present when the books were being marked, he cannot argue that practice was hidden from him.  Although the shrink-wrapping may be explained by contract requirements, Johnson contends that Capital Offset employees told him that the marking was an acceptable practice, when it was not, as is demonstrated by deposition testimony.

Material factual disputes prevent summary judgment on the fraudulent concealment claim.

C.  Consumer Protection Act

The New Hampshire Consumer Protection Act, RSA 358-A:2, provides: "It shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice

15

in the conduct of any trade or commerce within this state." Practices that violate the Act include "[r]epresenting that goods or services are of a particular standard, quality, or grade, . . . if they are of another." RSA 358-A:2,VII. Other commercial activity that is not specifically listed may violate the Act if "the objectionable conduct [] attain[s] a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." Axenics, Inc. v. Turner Const. Co., 164 N.H. 659, 676 (2013).

Johnson contends that Capital Offset and Stewart violated the Consumer Protection Act by representing that they had the ability to print Spiritual Passports as designed when they either knew they did not have that ability or did not know whether they could do so. Johnson also contends that Capital Offset and Stewart misrepresented the quality of the books they produced. Capital Offset and Stewart argue that the record evidence shows a dispute about whether the contract was breached but does not support a claim under the Consumer Protection Act.

As is decided above in the context of intentional and fraudulent misrepresentation, Johnson lacks evidence to support his claim that Capital Offset and Stewart intentionally misrepresented their ability to print Spiritual Passports. A claim under RSA 358-A:2 must be for deceptive or unfair practices

"requiring a degree of knowledge or intent." Kelton v. Hollis Ranch, LLC, 155 N.H. 666, 668 (2007). To the extent Capital Offset and Stewart misapprehended the demands of the job or incorrectly assessed their printing capabilities, those mistakes do not rise to the level of rascality that is required for a Consumer Protection Act claim. See, e.g., George v. Al Hoyt & Sons, Inc., 162 N.H. 123, 129 (2011) (contractor agreed to build a road and bridge, took plaintiff's deposit, but did not remit the amount for the bridge to the bridge manufacturer); Beer v. Bennett, 160 N.H. 166, 171 (2010) (car dealer advertised car as having "vigorous performance" and sold it without determining whether the car had necessary parts)[7]; State v. Sideris, 157 N.H. 258, 262 (2008) (roofing contractor agreed to repair homeowner's roof and took deposit with no intention of doing the work or returning the deposit).

Johnson does provide evidence that Capital Offset and Stewart may have known of defects in the printed and bound books when they were sent to the University of Texas Press. The record, therefore, shows a material factual dispute as to the

---

[7]In Beer, the dealer created the misleading impression that the car would run without doing any investigation to see if that were true. Here, the record evidence is that Capital Offset and Stewart initially thought they were capable of printing Spiritual Passports but may have run into difficulties during the project.

17

claim under the Consumer Protection Act that Capital Offset and Stewart represented that the books and the services they provided were of a particular standard, quality, or grade when they were not.  RSA 358-A:2,VII.  Capital Offset and Stewart are not entitled to summary judgment on the Consumer Protection Act claim to the extent it is based on a theory that they misrepresented the quality of the books produced.

## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (document no. 88) is granted in part and denied in part.  The motion is granted on Count IV to the extent the negligent misrepresentation claim is based on misrepresentations about the quality of or defects in the book during production or after it was produced but is denied as to misrepresentations in inducing the contract.  The motion is granted on Counts V and VI to the extent the claims are based on misrepresentations in inducing the contract but is denied as to misrepresentations about the quality of or defects in the book during production or after it was produced.  The motion is denied as to the fraudulent concealment claim in Count VII.  The motion is granted on the Consumer Protection Act claim, Count IX, to the extent it is based on misrepresentations in inducing the contract but is

denied as to misrepresentations about the quality of or defects in the book during production or after it was produced.

The claims that remain as to <u>Capital Offset and Stewart only</u> are as follows:

Count I   Capital Offset

Count II  Capital Offset

Count IV  Capital Offset and Stewart - contract inducement

Count V   Capital Offset and Stewart - quality and defects

Count VI  Capital Offset and Stewart - quality and defects

Count VII Capital Offset and Stewart

Count IX  Capital Offset and Stewart - quality and defects

SO ORDERED.

                                            /s/ Joseph A. DiClerico, Jr.
                                            Joseph A. DiClerico, Jr.
                                            United States District Judge

September 25, 2013

cc:  Jennifer Turco Beaudet, Esquire
     Lawrence F. Boyle, Esquire
     Matthew Joseph Delude, Esquire
     Elsabeth D. Foster, Esquire
     Thomas J. Pappas, Esquire
     Mark W. Shaughnessy, Esquire
     William N. Smart, Esquire