UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Alford Johnson as Trustee</u>
<u>of the Martha Wood Trust</u>


    v.                           Civil No. 11-cv-459-JD
                                   Opinion No. 2013 DNH 128

<u>The Capital Offset Company, Inc.,</u>
<u>Jay Stewart, Stephen Stinehour,</u>
<u>and Acme Bookbinding Company, Inc.</u>


<u>O R D E R</u>

    Alford Johnson, as the trustee of the Martha Wood Trust, brought suit against The Capital Offset Company, Inc.; its president, Jay Stewart; a consultant who later worked for Capital Offset, Stephen Stinehour; and Acme Bookbinding Company, alleging claims arising from the publication of a photography book, <u>Spiritual Passports</u>.[1]  Stinehour moves for summary judgment on Johnson's claims against him.  Johnson objects.

    In his reply, Stinehour states that he "incorporates by reference the arguments of Capital Offset and Jay Stewart as to the opinions of plaintiff's 'experts' Donald Mazzella, Susan Cox and Frank Biancalana . . . ."  As is discussed in the orders on the motions for summary judgment filed by Capital Offset and

---

[1]Capital Offset's third-party claims against Susan Cox have been resolved on summary judgment.

Stewart and Acme, Mazzella was not shown to have scientific, technical, or specialized knowledge that would allow him to give opinions about the methods and technical processes of bookbinding. For that reason, his opinion about the effect of the absence of glue traps was not considered. The opinions of Cox and Biancalana were not properly challenged and, therefore, were not restricted.

Johnson did not respond to Stinehour's reference to the expert testimony issue. For the reasons stated in the prior orders on summary judgment, Mazzella's opinion on the effect of the absence of glue traps will not be considered for purposes of Stinehour's motion for summary judgment.

## Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On issues where the movant does not have the burden of proof at trial, the movant can succeed on summary judgment by showing 'that there is an absence of evidence to support the nonmoving party's case.'" OneBeacon Am. Inc. Co. v. Commercial Union Assurance Co. of Canada, 684 F.3d 237, 241 (1st Cir. 2012) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

In deciding a motion for summary judgment, the court draws "all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation." Pruco Life Ins. Co. v. Wilmington Tr. Co., 721 F.3d 1, 6-7 (1st Cir. 2013) (internal quotation marks omitted). "A genuine issue is one that can be resolved in favor of either party, and a material fact is one which has the potential of affecting the outcome of the case." Jakobiec v. Merrill Lynch Life Ins. Co., 711 F.3d 217, 223 (1st Cir. 2013).

## Background

Johnson, as trustee of the Martha Wood Trust, began working on a project to produce a book of photographs that had been taken by Johnson's wife, Martha Wood, shortly before her death. Johnson hired Susan Cox to work with him on the design and production of the book. Frank Biancalana also worked on the project with Cox. The photography book is titled Spiritual Passports.

Cox and Biancalana had previously had another book printed by Stephen Stinehour at Stinehour Press. Stinehour worked with Johnson, Cox, and Biancalana during the Spiritual Passports

project.[2]  In 2007, Stinehour recommended that Johnson hire Capital Offset to print Spiritual Passports, which he did.

Stinehour became an employee of Capital Offset in January of 2008.  Although Stinehour remembers telling Cox in the fall of 2008 that he was working for Capital Offset, Cox represents that she first learned of Stinehour's employment at Capital Offset in a letter from Stinehour dated January 17, 2009.  Johnson first learned of Stinehour's employment at Capital Offset in August of 2009 during the printing of Spiritual Passports.  Stinehour was also involved in Capital Offset's decision to hire Acme to bind Spiritual Passports.

Johnson contends that most of the books produced have defects in the printing or binding.  Stinehour contends that the majority of the books are properly printed and bound.

Discussion

Johnson brings claims of negligence, negligent misrepresentation, intentional misrepresentation, and breach of fiduciary duty against Stinehour.  Stinehour moves for summary judgment on all claims against him.  Johnson objects.

---

[2] Johnson cites to pages of his deposition testimony that were not submitted with his objection to support his statement that Stinehour was hired as an independent consultant.

A.   <u>Negligence - Count III</u>

Johnson alleges that Stinehour owed a duty to him to exercise reasonable care in selecting a printer and a binder for <u>Spiritual Passports</u> and that he breached that duty in selecting Capital Offset and Acme.  In support of summary judgment, Stinehour notes that motions to dismiss the negligence claims filed by Capital Offset and Acme were granted.  Stinehour then states only:

> To the extent that any negligence claim relating to the printing and/or binding of the Spiritual Passports books [sic], Stephen Stinehour respectfully requests summary judgment as to those counts where the plaintiff has not demonstrated that Stephen Stinehour had a duty to control the actions of Capital Offset and/or Acme Bookbinding with respect to the printing and binding of these books in his position as a sales representative."

Doc. no. 89 at 7.

Capital Offset and Acme moved to dismiss the negligence claim against them based on the economic loss doctrine.  Johnson then agreed to dismiss the negligence claim as to them.  Although Stinehour moved to dismiss the breach of fiduciary duty claim against him, he did not move to dismiss the negligence claim.

Stinehour's brief statement challenging the negligence claim, without any citation to a legal standard or to record facts, is insufficient to raise the issue for summary judgment.

B.  Negligent Misrepresentation

Under New Hampshire law, the elements of a negligent misrepresentation claim are "a negligent misrepresentation of a material fact by the defendant and justifiable reliance by the plaintiff." Wyle v. Lees, 162 N.H. 406, 413 (2011).  Negligence is based on "the duty of one who volunteers information to another not having equal knowledge, with the intention that he will act upon it, to exercise reasonable care to verify the truth of his statements before making them." Id.  A misrepresentation is made when a defendant knew or should have known that his statements were false. Id.  In addition, the misrepresentation must have caused the plaintiff harm or injury, or stated in other terms, the plaintiff must have reasonably relied on the misrepresentation to his detriment. See id.; Snierson v. Scruton, 145 N.H. 73, 78 (2000); BAE Sys. Information & Elecs. Sys. Integration Inc. v. SpaceKey Components, Inc., 2011 WL 5040705, at *14 (D.N.H. Oct. 24, 2011).

Stinehour asserts that Johnson admitted that Capital Offset and Acme were qualified to print and bind the books.  The cited support for that statement, Johnson's responses to requests for admissions, however, is contrary to Stinehour's representation. Johnson denied that Capital Offset and Acme were qualified to print and bind the books.

Stinehour also asserts that he did not misrepresent the quality of the books after they were printed and bound and that Johnson had an opportunity to inspect the books himself. As is explained more fully in the order on the motion for summary judgment filed by Capital Offset and Stewart, Johnson's visit to Acme during the binding process, without Cox and Biancalana, does not undermine his reliance on representations made by Stinehour. Therefore, a factual dispute precludes summary judgment.

B.  Intentional Misrepresentation

Stinehour moved for summary judgment on negligent and intentional misrepresentation together. In support, he states: "Although the claims are not exactly the same, the defenses of Stephen Stinehour are substantially similar to Capital Offset's and Jay Stewart's in that he did not misrepresent the quality of the books - there is a dispute as to the quality of the books better resolved through contract law than through tort." Doc. 89 at 6. As such, Stinehour has not shown that he is entitled to summary judgment on Johnson's intentional misrepresentation claim.

7

C.  Breach of Fiduciary Duty

Stinehour contends that he did not breach his fiduciary duty to Johnson because he "recommended a printing company that plaintiff admits was competent to print the job and a binding company that plaintiff admits was competent to bind the job."[3] Doc. no. 89 at 5.  Stinehour explains, confusingly, that his "recommendation would not have presented any problem absent the plaintiff's claim of breach of contract, and absent plaintiff's claims regarding the quality of some of the books produced, there would be no claim."  Id.  Stinehour further contends, citing Seymour v. N.H. Savings Bank, 131 N.H. 753 (1989), that he merely recommended Capital Offset and Acme based on his knowledge of their work at the time.

In response, Johnson asserts that in the role of a fiduciary, Stinehour was obligated to put Johnson's best interests ahead of his own self interest, citing Brzica v. Trs. of Dartmouth College, 147 N.H. 443, 447 (2002).  Johnson contends that Stinehour was more interested in serving his own interests and Capital Offset's interests in his recommendations than he was in providing good advice about who should print and bind

---

[3]Stinehour acknowledges that he owed Johnson a fiduciary duty in providing advice on who should print and bind Spiritual Passports.

Spiritual Passports.  Johnson also contends that Stinehour made many of the misrepresentations about the quality of the books and acceptable practices during the inspection process.

Johnson contends that Seymour does not apply under the circumstances of this case.  In Seymour, the plaintiffs applied for a construction loan from the defendant bank and began the process of hiring a contractor to do the work.  131 N.H. at 754.  When the plaintiffs told a loan officer at the bank which contractor they were considering for the job, the officer remarked that the contractor had a fine reputation.  Id. at 755.  The bank granted the loan application, and the plaintiffs hired the contractor they had discussed with the loan officer.  Id.

When the plaintiffs had misgivings about the work the contractor was doing, before authorizing a fourth payment, they asked a vice president at the bank when the bank would inspect the project, and he replied that the inspection would be done on completion because of the contractor's good reputation.  Id.  The vice president also recommended that the plaintiffs pay the contractor because he was working on the project.  Id.  Ultimately, the plaintiffs were not satisfied with the contractor's work.  Id.

The plaintiffs sued the bank for breach of contract and breach of fiduciary duties.  Id. at 756.  The trial court denied

requests for findings that the bank recommended the contractor and led the plaintiffs to believe they could rely on inspections of the project by the bank.  Id. at 758.  Further, the bank made the payments to the contractor on behalf of the plaintiffs, not for its own benefit.  Id.  Therefore, no breach of fiduciary duty was found.

In this case, unlike the situation in Seymour, Stinehour was hired to advise Johnson about who should print and bind the book. There is no dispute that Stinehour owed Johnson a fiduciary duty to provide advice that was in Johnson's best interests.  During his work with Johnson, however, Stinehour accepted a job at Capital Offset which arguably created divided loyalties.  Factual disputes about Stinehour's advice preclude summary judgment on the breach of fiduciary duty claim.

Conclusion

For the foregoing reasons, the defendant's motion for summary judgment (document no. 89) is denied.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

September 25, 2013

cc: Jennifer Turco Beaudet, Esquire
    Lawrence F. Boyle, Esquire
    Matthew Joseph Delude, Esquire
    Elsabeth D. Foster, Esquire
    Thomas J. Pappas, Esquire
    Mark W. Shaughnessy, Esquire
    William N. Smart, Esquire