UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>Alford Johnson, as Trustee</u>
<u>of the Martha Wood Trust</u>

     v.                                Civil No. 11-cv-459-JD
                                      Opinion No. 2014 DNH 110
<u>The Capital Offset</u>
<u>Company, Inc., et al.</u>

<u>O R D E R</u>

Alford Johnson, as the trustee of the Martha Wood Trust,
brought suit against The Capital Offset Company, Inc.; its
president, Jay Stewart; a consultant who later worked for Capital
Offset, Stephen Stinehour; and Acme Bookbinding Company, alleging
claims arising from printing and binding a photography book,
<u>Spiritual Passports</u>.  Capital Offset, Stewart, and Stinehour
move, in limine, to exclude evidence of damages for the costs
incurred in producing <u>Spiritual Passports</u> and evidence of lost
profits for books that were not sold.  In response, Johnson
agrees that certain costs incurred for the production of
<u>Spiritual Passports</u> will not be claimed as damages but objects to
the motion to the extent it seeks to exclude other claimed
damages.  The court directed the parties to brief the issue of
the application of the Uniform Commercial Code ("UCC") in this
case, which they have done.

I.  <u>Application of the UCC - RSA Chapter 382-A:2</u>

Capital Offset, Jay Stewart, and Stephen Stinehour contend
that RSA chapter 382-A:2 ("UCC") governs the breach of contract

claim and defenses in this case.[1]  Johnson contends that the UCC
does not apply to the breach of contract claim because the
parties' agreement was for services not for goods.  The parties
agree that a contract existed between Johnson and Capital Offset
for printing and binding Spiritual Passports and that the
contract was not memorialized by a single signed document but
instead was provided in a "fluid process of estimates."  They
also agree that one of the estimates, dated July 9, 2009,
contains many of the contract terms.

        The UCC applies to transactions in goods.  RSA 382-A:2-102.
For purposes of the UCC, "goods" are defined as "all things
(including specially manufactured goods) which are movable at the
time of identification to the contract for sale . . . ."  RSA
382-A:2-105.  When a contract involves both goods and services,
the court may apply the "gravamen of the action" test or the
"predominant factor" test to determine whether the UCC governs.
In re Trailer & Plumbing Supplies, 133 N.H. 432, 435 (1990).

        The "gravamen of the action" test "simply asks whether the
underlying action is brought because of alleged defective goods
or because of the quality of the service rendered."  Id. at 436.
The "predominant factor" test examines the nature of the
transaction in the contract and whether the predominant factor,
thrust, or purpose of the contract is the rendition of a service,

_____

        [1]Johnson alleges breach of contract against only Capital
Offset.  Therefore, the other defendants are not affected by the
issue of the application of the UCC in this case.

with goods incidentally involved, or is a sales transaction with labor only incidentally involved.  Id. (citing Bonebrake v. Cox, 499 F.2d 951, 960 (8th Cir. 1974)).  An example given of a service contract, with incidental goods, is a contract with an artist for a painting, and an example of a sales transaction contract, with incidental labor, is installation of a water heater in a residence.  Trailer & Plumbing, 133 N.H. at 436.

In this case, Johnson alleges that under their contract, Capital Offset "agreed to print a certain number of copies of Spiritual Passports in a manner consistent with Plaintiff's specifications and industry standards for the printing and binding of fine art books."  Compl. ¶ 69.  Johnson further alleges that Capital Offset failed to print the books as agreed and that Acme Bookbinding, as Capital Offset's agent, failed to bind the books as agreed.  As such, the action was brought because of the quality of the services provided by Capital Offset, although the result was defective books.  Under the gravamen of the action test, therefore, the UCC does not apply.

Similarly, application of the predominant factor test weighs in favor of a service contract.  Like a contract for an artist to paint a picture, Johnson hired Capital Offset to produce an art book of photographs by printing the photographs and having the pages bound into books.  Therefore, the contract was for services, printing and binding the books.  See, e.g., Curtis Publishing Co. v. Sheridan, 53 F.R.D. 642, 644 (S.D.N.Y. 1971); accord Wills v. 10-X Mfg. Co., 609 F.2d 248, 254 (6th Cir. 1979);

3

see also Duro Bag Mfg., Inc. v. Printing Servs. Co., Inc., 2010
WL 3586855, at *5 (S.D. Ohio Sept. 9, 2010).

In Colonial Life Ins. Co. of Am. v. Elec. Data Sys. Corp.,
817 F. Supp. 235, 239 (D.N.H. 1993), the court concluded that a
contract for the license of computer software was a transaction
in goods for purposes of the UCC because the servicing
contemplated by the contract was to support the software product.
Here, in contrast, the services to be provided by Capital Offset
were the purpose of the contract, to produce the book.  The UCC
does not apply to the breach of contract claim in this case.


II.  Motion to Exclude Evidence of Damages

Capital Offset, Stewart, and Stinehour all move to exclude
evidence of damages based on the costs of producing Spiritual
Passports and damages due to lost profits.  The motion appears to
focus on the breach of contract claim against Capital Offset, but
also mentions other claims in passing.  The two categories of
damages are addressed separately.


A.  Costs Incurred in Producing Spiritual Passports

 The defendants challenge certain items listed as damages by
Johnson.  In his response to the motion, Johnson agreed that
certain costs associated with producing Spiritual Passports are
not recoverable as damages because those costs would have been
incurred regardless of the defendants' conduct.  The remaining

disputed damages are seventeen items for costs incurred between June 1, 2006, and June 1, 2010.[2]

### 1.  Breach of Contract

To the extent that Capital Offset relies on the provisions of RSA 382-A:2 to exclude production costs, those arguments are inapposite to this case.

"'The goal of damages in actions for breach of contract is to put the non-breaching party in the same position it would have been in if the contract had been fully performed.'"  Audette v. Cummings, 82 A.3d 1269, 1275 (N.H. 2013) (quoting Robert E. Tardiff, Inc. v. Twin Oaks Realty Tr., 130 N.H. 673, 677 (1988)). The nonbreaching party is entitled to consequential damages that are caused by the breach and that "could have been reasonably anticipated by the parties as likely to be caused by the defendant's breach." George v. Al Hoyt & Sons, Inc., 162 N.H. 123, 134 (2011).  "The requirement of reasonable foreseeability may be satisfied in either of two ways:  (1) as a matter of law if the damages follow the breach in the ordinary course of events; or (2) by the claimant specifically proving that the breaching party had reason to know the facts and to foresee injury." Id.  "A party claiming damages for breach of contract must show, by a preponderance of the evidence, that the damages were caused by the defendant's alleged wrongful act, as well as

---

[2]The list is reproduced as Appendix A to this order.

the extent and amount of such damages." <u>Audette</u>, 82 A.3d at
1275.

The disputed items are money paid to Stephen Stinehour to
produce and print a prospectus for the book and to consult on
printing, the costs of Johnson's efforts to find a publisher, the
cost of a consultation for a distribution agreement, marketing
expenses, a fee paid to Susan Cox for art direction, and costs
for trips to Capital Offset and to Acme Bookbinding. Capital
Offset contends that the disputed amounts cannot be recovered as
damages for breach of contract because they were incurred in
producing the books and were not caused by any breach of the
contract. Johnson argues that the disputed damages are amounts
that were paid in preparation for producing <u>Spiritual Passports</u>
and are recoverable for breach of contract because those efforts
were wasted when the defendants' conduct caused the failure of
the book.

The seventeen disputed amounts, which total $39,021.47, were
incurred in preparation to produce <u>Spiritual Passports</u>. Under
the circumstances of this case, Capital Offset likely had reason
to know that Johnson had spent money to prepare for publication
of the book and that breach of their contract would cause him to
lose the value of those preparations. Therefore, Johnson will be
allowed to present evidence of the disputed amounts to prove
damages, if he chooses to proceed under the lost costs of
production damages theory.

Johnson acknowledges that he cannot recover both the amounts
spent for wasted efforts in producing the book and his future

6

costs for reproducing the book.  He contends, however, that he can present evidence of both although he can recover under only one theory.  To avoid confusing the jury, Johnson will be required to elect which breach of damages theory he will pursue at trial.

### 2.   Breach of Fiduciary Duty

Johnson contends that certain amounts paid to Stinehour for his consulting services, which are included in the challenged costs, are recoverable as damages for Stinehour's breach of fiduciary duty.  The defendants do not challenge any damages in the context of the breach of fiduciary duty claim.  Therefore, those damages are not excluded.

### 3.   Other Claims

The defendants state that "[t]he costs listed other than incidental damages further cannot be recovered for plaintiff's claims of misrepresentation, fraudulent misrepresentation, or violations of the Consumer Protection Act where, as a matter of law, these costs were not incurred as a result of the alleged wrongful conduct."  The defendants do not identify which costs are incidental damages and which are those that could not be recovered under the tort claims, leaving the issue unclear. Therefore, the disputed damages items cannot be excluded for purposes of the other claims.

B.  <u>Lost Profits</u>

The defendants also contend that Johnson cannot recover damages for lost profits from the sale of <u>Spiritual Passports</u> because Johnson does not have an expert witness to support that claim for damages.  The defendants argue that lost profits are speculative and that in this case an expert is necessary to establish lost profits.  In addition, the defendants assert that the costs incurred in producing the book and the amount Johnson planned to charge in selling the book would show a loss rather than a profit.

In response, Johnson argues that he is entitled to show his lost revenue, as distinct from lost profits, on the sale of the books.  Johnson, apparently, concedes that sales of the books would not have yielded provided a profit.  He states that he would have received 50% of the gross sales of <u>Spiritual Passports</u>, which was to be sold for $75 a copy, and that those revenues would have helped to offset the costs of production.  He further contends that the lost revenue claim does not require expert testimony.  Johnson again acknowledges that he is entitled to damages for either the lost costs of producing the defective book or the future costs that will be incurred in reproducing it, but not both.

Based on the present motion and Johnson's response, this case does not raise an issue of lost profits.  The defendants have not argued that expert testimony is required in this case to show lost revenue due to the failure of the publication of <u>Spiritual Passports</u>.  However, as is noted above, Johnson will be

8

required to elect a theory of damages and will not be able to proceed claiming both lost costs for producing the book and future costs for reproducing the book.

<u>Conclusion</u>

For the foregoing reasons, the UCC, RSA chapter 382-A:2, does not govern the breach of contract claim in this case.  The defendants' motion to exclude certain evidence of damages (document no. 126) is denied.

The plaintiff shall elect which damages theory he will pursue and shall notify the defendants and the court of that election **on or before June 20, 2014.**

The parties would be well-advised to discuss a resolution of this case prior to expending additional resources to litigate it.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

May 22, 2014

cc:  Lawrence F. Boyle, Esq.
     Gary M. Burt, Esq.
     Anthony M. Campo, Esq.
     Thomas J. Pappas, Esq.
     Arnold Rosenblatt, Esq.
     Mark W. Shaughnessy, Esq.
     William N. Smart, Esq.

APPENDIX A

| DATE | Description | Amount Spent |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| 6/1/06 | Amount paid to Stephen Stinehour to print a prospectus. | $900.00 |
| 07/14/06 | Amount paid to Stephen Stinehour to prepare prospectus. | $818.45 |
| 08/02/06 | Amount paid to Stephen Stinehour for additional prints for the prospectus. | $67.60 |
| 02/16/07 | New York visit to prospective publisher. | $506.50 |
| 06/01/07 | Amount spent to find a publisher. | $874.45 |
| 03/22/07 | Additional amount spent to find a publisher. | $2,103.66 |
| 07/11/07 | Consultation on distribution agreement. | $1,800.00 |
| 02/21/08 | Large print on canvas for marketing purposes. | $575.00 |
| 06/02/08 | Production advance to Fresco Fine Art Publications. | $5,000.00 |
| 10/21/08 | A marketing trip to the Peruvian Embassy. | $246.38 |
| 07/04/09 | Amount spent for layout and design prints. | $4,724.65 |
| 07/15/09 | Trip to Offset to check presses. | $4,673.30 |
| 08/20/09 | Additional art direction fee to Susan Cox. | $10,000.00 |
| 10/26/09 | Print consulting fee paid to Stephen Stinehour. | $5,000.00 |
| 11/18/09 | Trip to Acme Bookbinding. | $639.06 |
| 12/17/09 | Book signing in Taos, New Mexico. | $642.42 |
| 06/01/10 | Cost for marketing piece. | $450.00 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | Total | $39,021.47 |